UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIRLOW LLC,

        Plaintiff,                                  Case No. 1:06-CV-375

v                                                  Hon. Hugh W. Brenneman, Jr.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

        Defendant.
_____/

**OPINION**

Pending before the court is a motion by defendant Bureau of Alcohol, Tobacco and Firearms ("ATF") for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure (docket no. 38). For the reasons stated below, the motion will be GRANTED.

**Background**

The plaintiff in this action is Virlow LLC ("Virlow") which was incorporated in 2003 with Virginia Lowe as its sole member and owner. Virlow seeks to purchase Barnes Hardware/500 Guns ("Barnes Hardware"), a business currently owned by Virginia Lowe's mother's corporation, Buckner Enterprises, Ltd. ("Buckner Enterprises"). Virginia Lowe's mother is Joan Santes who obtained Barnes Hardware as part of a divorce settlement in 1984. Joan Santes is the sole member and owner of Buckner Enterprises. The sale is contingent upon Virlow receiving a federal firearms license.

In October 2000, Barnes Hardware, a federal firearms licensee, knowingly sold firearms to convicted felons on two occasions. Both illegal sales were recorded on hidden cameras by undercover investigators for the State of Michigan. Mrs. Santes entered pleas of guilty on behalf of the owner of Barnes Hardware, Buckner Enterprises, to two felonies, and in March 2002, Buckner Enterprises was sentenced to restitution, a fine, and one year of probation.

As a result of its felony convictions, Buckner Enterprises lost its right to hold a federal firearms license. Buckner Enterprises thereupon applied for restoration of its federal firearms privileges, and the ATF undertook an investigation of the company and its history of complying with federal and state firearms laws and regulations. On October 8, 2003, ATF informed Buckner Enterprises that its Application for Restoration was denied. This decision was based on Buckner Enterprises' knowing sale of firearms to a felon, as well as its poor compliance history, record-keeping violations, and unfavorable references. Buckner Enterprises chose not to challenge this determination.

Two weeks after the ATF issued its denial to Buckner Enterprises, Joan Santes filled out Articles of Organization to set up the plaintiff, Virlow. The Articles of Organization were signed by Virginia Lowe on October 22, 2003. Two days later, on October 24, 2003, Virlow LLC submitted a federal firearms license application.

The ATF denied Virlow's application on April 1, 2004, explaining in its Notice of Denial of Application for License that "the purpose and formation of Virlow LLC was to circumvent the statute restricting the issuance of firearm licenses to convicted felons. . . the proposed operations of Virlow LLC are substantially the same as the operations of its related predecessor, Buckner Enterprises Ltd., and Buckner Enterprises Ltd. has the ability to direct the management and policies

2

of Virlow LLC." Therefore, the application was denied and Virlow was prohibited from transporting, shipping or receiving firearms or ammunition in interstate or foreign commerce.

Virlow appealed the Notice of Denial and a hearing was held before the ATF on August 24, 2004. The hearing officer filed a report with the ATF's Director of Industry Operations (DIO), the official responsible for making the licensing determination, which recommended that Virlow's application be granted. The DIO did not follow the hearing officer's recommendation. The DIO reviewed the administrative record and then issued a Final Notice of Denial of Application to plaintiff. The DIO concluded that Virlow had been formed for the purpose of circumventing the federal statute, and had omitted material information from its application. The DIO concluded that Buckner Enterprises could control the management and policies of Virlow.

Following the final denial of its application, Virlow filed the present action seeking *de novo* judicial review of ATF's denial of its application for a license. 18 U.S.C. § 922(f)(3). ATF now seeks summary judgment.

**Standard of Review**

Title 18 U.S.C. § 923(f)(3) provides that plaintiff may file a petition with this court for a *de novo* judicial review of the denial of its application for a license. In this proceeding, the court "may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered" at the ATF hearing. *Id.* This section further provides that if this court decides the Attorney General "was not authorized to deny the application. . ., the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court." *Id.*

The scope of this court's review was discussed at length in *Kuss v. U.S. Bureau of Alcohol, Tobacco and Firearms,* 440 F.Supp. 2d 645 (E.D Ky. 2005) and summarized as follows:

> In summary, 18 U.S.C. § 923(f)(3) requires district courts to undertake *de novo* review of an administrative decision to revoke a firearms license. However, that review may be confined to the administrative record or may be supplemented by the admission of additional evidence. In either event, although the trial court need not accord any particular weight to the administrator's findings and decision, it may, in the exercise of its discretion, accord them such weight as it finds to be appropriate.

*Id.* at 649 (and cases cited therein).

In *Morgan v. U.S. Department of Justice, "BATF",* 473 F.Supp. 2d 756 (E.D. Mich. 2007), the court further elaborated on the scope of the court's review. In noting that while § 923(f)(3) mandated *"de novo"* review, the review was limited to the question of whether the denial of an application was "authorized." The court acknowledged that while the decision under review was not necessarily clothed with any presumption of correctness or other advantage, by confining a court's inquiry to the narrow question of whether the Attorney General's decision was "authorized," the statute "'does not call upon this Court to decide whether it would revoke the license in it[s] own judgment, but whether all of the evidence presented is sufficient to justify the Attorney General's revocation of the license.'", citing *Pinion Enterprises, Inc. v. Ashcroft,* 371 F.Supp. 2d 1311, 1315 (N.D.Ala. 2005). *Id.* at 762. *See also, Procaccio v. Lambert,* No. 5:05-MC-0083, 2006 WL 2090166, at * 2 (N.D.Ohio, July 25, 2006) ("[T]he Court considers whether the Attorney General's revocation was authorized, not whether this Court would make the same decision if originally presented with the issue.").

Summary judgment is available under Fed.R.Civ.P. 56(c) if the moving party can establish that the "pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986). [N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). Plaintiff must present more than a mere scintilla of the evidence. To support its position, it must present evidence on whether the trier of fact could find for the plaintiff. *See Id.* (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986)).

**Discussion**

Every person who engages in business as a dealer in firearms or ammunition must be licensed by the Attorney General of the United States. In the event that an application for a license is denied, or a license that has already been issued is revoked, the applicant or licensee may, pursuant to 18 U.S.C. § 923(f)(3), seek judicial review of the denial or revocation in district court. In this instance, most of the factual history in this case leading to the contested denial is not seriously contested. Joan Santes is the sole owner of Buckner Enterprises. Buckner Enterprises, dba Barnes Hardware/500 Guns, held a federal firearms license which was good until May 1, 2003. The license was signed by Joan M. Santes as licensee. The store, however, ran afoul of an undercover investigation conducted by the Michigan State Police to determine whether convicted felons could acquire firearms from federal firearms licensees in various gun shops throughout Michigan.

The usual procedure in this investigation was for a convicted felon, accompanied by an undercover state police officer, to visit each of the firearms dealer being investigated. The felon would select a firearm and begin the required paperwork to complete the sale. At the same time the felon would disclose his status to an employee of the gun dealer. In several instances, including two involving Barnes Hardware, the gun dealers allowed the felon to obtain the firearm through a straw purchase using the undercover officer. These were state felony violations. Buckner Enterprises, Ltd., through its owner, Joan Santes, pled guilty to two felonies and the company was fined and placed on probation. One of the sales in the Buckner Enterprises case was handled by George Lowe, Joan Santes' son-in-law.

According to plaintiff, as a result of these felony convictions, Buckner Enterprises lost its ability to hold a federal firearms license in 2003 because the Bureau of Alcohol, Tobacco and Firearms refused to renew it. Since the license expiration date was May 1, 2003, the court assumes that was the date the license was effectively lost.

On October 8, 2003, the Assistant Director of the Bureau of Alcohol, Tobacco and Firearms informed Joan Santes that Buckner Enterprises' application for restoration of its federal firearms privileges was being denied.

Unable to renew the firearms license for Barnes Hardware/500 Guns, Buckner Enterprises, through Joan Santes, agreed to sell the firearms portion of the business to Joan's daughter, Virginia Lowe, who had also been an employee at the store. Joan Santes filled out the Articles of Organization for the new company, Virlow LLC, which Virginia Lowe signed on October 22, 2003. Two days later, Virginia Lowe submitted a federal firearms license application ("Virlow's Application"). Virginia Lowe was listed as the sole member of Virlow LLC. Consistent

with Virlow's intent to buy the gun portion of the business from Buckner Enterprises, Virlow's license application stated that the business would be obtained from Buckner Enterprises and would be run at the same location.

On November 12, 2003, an ATF inspector interviewed Virginia Lowe in connection with Virlow's application. Virginia Lowe told the inspector that Virlow intended to take over Buckner Enterprises' inventory of firearms. She also indicated that her husband, George Lowe, might assist her in the business. George Lowe had been one of the employees of Buckner Enterprises who had been involved in the illegal sales.

Subsequent to the interview with the ATF inspector, Virginia Lowe and her mother realized that to keep both businesses financially viable, Virginia Lowe should purchase both. On December 9, 2003, Joan Santes met with loan officers of Valley Ridge Bank to discuss the possibilities of selling Barnes Hardware/500 Guns to Virlow LLC. The completion of the purchase by Virlow LLC was dependent upon Virlow successfully acquiring a federal firearms license. Ultimately, the parties decided that the purchase would be a seller-financed transaction to generate a flow of annuity income to Joan Santes through the course of her retirement years.

Joan Santes also began a letter-writing campaign during this period. On March 25, 2004, she wrote a letter to President Bush stating that she desperately needed his assistance and reminded him that she had personally contributed to his campaign in 2000. The letter was typed and signed by Joan M. Santes on behalf of Buckner Enterprises, Ltd. In the margin, the words <u>new corp</u>, Virlow, LLC, Virgina D. Lowe, President, were also written in by hand.

At apparently the same time, Joan Santes also wrote a handwritten note to her congressman over her own signature stating that:

> "Pres. Virginia Lowe applied for a new FFL and was denied. Could you please phone & recommend that a license be issued.."

On March 29, 2004, Joan Santes and Virginia Lowe wrote a letter to the senior senator from the State of Michigan to request his assistance as well. The letter was written in the conjunctive, listing both Buckner Enterprises, Ltd and Virlow LLC. The letter is discussed more fully below.

Despite the letter writing campaign, Virlow's application for a federal firearms license was denied on April 1, 2004, by the Director of Industry Operations, Detroit Field Office. The Notice of Denial stated that the purpose for the formation of Virlow had been to circumvent the statute restricting the issuance of firearms licenses to convicted felons. It added that "[t]he proposed operations of Virlow LLC are substantially the same as the operations of its related predecessor, Buckner Enterprises, Ltd., and Buckner Enterprises Ltd. has the ability to direct the management and policies of Virlow LLC." Virlow immediately instituted an appeal upon receipt of the denial notice. As a result, an informal day-long hearing was held on August 24, 2004, pursuant to 18 U.S.C. § 923(f) and 27 C.F.R. § 478.72.

During the interim, several steps were taken by Joan Santes and Virginia Lowe to move the purported sale between Buckner Enterprises and Virlow along. On April 9, 2004, Virlow opened an account with Valley Ridge Bank. Virginia Lowe was the only authorized user and signatory of that account. On August 1, 2004, Buckner Enterprises and Virlow entered into a purchase agreement for the entire hardware, contingent upon acquisition of a Federal Firearms License, although the purchase agreement was not introduced into evidence at the August 24, 2004 hearing.

The hearing officer made his recommendation to the DIO in the Detroit Field Division the following April 1, 2005. However, as to the existence of Virlow as a truly separate and distinct entity at the time of the hearing, it was only an expectation at that time, not a reality. Also, no purchase price had been agreed upon at the time of the hearing for the Hardware and gun shop. Joan Santes had previously paid the incorporation fees for Virlow, and throughout this period continued to pay all attorney and accountant expenses attendant to the anticipated transfer of the business from Buckner Enterprises to Virlow.

More significant than even this, however, Joan Santes did not hesitate to act unilaterally as Virlow. In February 2005, following the hearing and prior to recommendation of the hearing officer, the Michigan Department of Consumer and Industry Services sent a Notice of Employer Status to Virlow. The notice stated Virlow LLC had incurred a liability under the Michigan Employment Security Act because of its employee payroll. Mrs. Santes hand wrote a notation on the notice as follows:

> "This cannot be, this business is not operating, and does not, as of yet, have any employees. We are waiting for the ATF license before we even buy the existing business."

Mrs. Santes then filled out a Discontinuance or Disposition of Business or Assets form for the same agency, pointing out that Virlow had no liability because it had no employees. At the end of the form there was a place to sign a Certificate of Correctness attesting that the information contained in the form was true to the best of the signor's knowledge. Mrs. Santes signed her daughter's name to the form, Virginia Dale Lowe, as president. The certificate was dated February 17, 2005. Mrs. Lowe then submitted the form to the agency, before telling her daughter about it.

Mrs. Lowe's explanation for Mrs. Santes' involvement was that Mrs. Santes opened 90% of the mail sent to the address used by Virlow LLC.

There is no indication the hearing officer was made aware of any of this.

In a memorandum dated April 1, 2005, the hearing officer recommended to the Director of Industry Operations (DIO) at the Detroit City Field Division, that Virlow's application for a firearms license be approved.[1]

On April 3, 2006, the DIO issued a Final Notice denying Virlow's application for a firearms license. Virlow's present petition before the court pursuant to 18 U.S.C. § 923(f)(3) for a *de novo* judicial review arises from this denial by the DIO.

In asking the court to determine whether the Attorney General's decision was "authorized", the statute necessarily focuses on the situation as it existed when that decision was made. If the situation has evolved by the time the matter reaches the court, this would appear to be basis for a future application or proceeding by any party not satisfied with the court's review of the matter as it stood when the Attorney General considered it. That, in any event, is the focus of this court's decision. To hold otherwise, notwithstanding the court's authority to consider the matter *ab inititio*, would be like trying to hit a moving target.

In this instance, the decision to deny Virlow's application was authorized, because there was simply never any meaningful distinction between Virlow and Buckner Enterprises. The court reaches this decision without affording defendant any presumption of correctness. Notwithstanding that Virginia Lowe may have desired to form her own company to buy the guns

---

[1] Mr. Burton supplemented his report with a brief addendum on December 15, 2005, because part of the record had been misplaced. The supplement merely reiterated in an abbreviated form what the hearing officer had said previously.

and/or the hardware, she had not done so at the time of the DIO's final notice and probably has not done so to this day. At no point in this process did she act independently of her mother. Moreover, neither the sale nor subsequent operation of the business would have had any of the earmarks of an arms-length transaction. This is important because the whole point of the sale was to remove the former licensee, which had been convicted of a felony, from possessing, directly or indirectly, the power to manage the new company or direct its policies. *See* 18 U.S.C. § 923(d)(1). Absent this, the sale was a meaningless transaction as far as the licensing statute was concerned.

The pervasive influence of Joan Santes and Buckner Enterprises throughout the application process was manifest, and it would not have ended with the sale. Assuming, *arguendo,* Joan Santes actually pulled back from daily involvement in the business that she had run for a quarter of a century, an unlikely assumption if the application process was any indication, her overwhelming equity interest in the new business, and her need to have the new business succeed if she were to have significant retirement income, belies any contention that she would not have been in a position to direct the management or policies of Virlow.

Mrs. Santes' involvement, from the time the ATF issued its denial to Buckner Enterprises, to the time she filled out the Articles of Organization to set up Virlow LLC, to her letter to President Bush over five months later imploring his assistance for her store and its employees, to her hand-written note to her congressman requesting that a license be issued to her daughter, to her letter to Michigan's senior senator for the same purpose (pointing out therein that the ATF had denied "our new license application," and that "we formed Virlow LLC"), to her reply to the Michigan Department of Consumer and Industry Services, cannot be gainsaid. Mrs. Santes was the driving force at all stages. As she stated herself in her letter to the senator, she had been in business

for over 25 years and had sold around 28,000 firearms. She acknowledged the violations committed by her two employees, but sought to reassure the senator by stating "**I** can say that it will not happen again. **We** will do more instructing on the sale of firearms when the new license is obtained for Virlow LLC" (emphasis added). Mrs. Santes also candidly acknowledged in an attachment to that letter, that the "ATF verbally denied **our** new license application," and that "**we** formed Virlow LLC" (emphasis added). This is convincing evidence that she fully intended to remain involved, as she had been before, notwithstanding that she had made her daughter president of the new company that would, nominally at best, take over.

Nor was any significant change in the store itself contemplated. It apparently would be the same operation in the same place with simply a new owner of record. Virginia Lowe, who remained employed by Buckner Enterprises during the pendency of this matter, admitted she was going to purchase Barnes Hardware/500 Guns from her mother "to keep it in the family," and that her mother "wants a family member to keep the business going." Buckner Enterprises also still employed both Mrs. Lowe's brother as the store manager, and Mrs. Lowe's husband, the man who had sold a gun to a felon. Buckner Enterprises' accountant had advised them on how to set up Virlow. Virginia Lowe also testified at the hearing that she had told the inspector that her husband, George Lowe, would probably help her run the gun shop.

Financially, Joan Santes' influence was even more pervasive. Virginia Lowe stated at the hearing that Mrs. Santes would finance the transaction and receive a monthly installment check from Virlow. Joan Santes paid Virlow's accounting and attorneys fees from the formation of that company through the administrative process. She also paid the fees for the attorneys' representation of Virlow at the August 2004 hearing, and she paid for Virlow's attorneys in this

court. The extent of Mrs. Santes' continued financial involvement in the business was further evidenced by the statements of Virginia Lowe at her deposition when she stated that Joan Santes was paying for everything for Virlow, until Virlow obtained a license, and that Joan Santes would continue financing everything for Virlow for the first five years after Virlow obtained a license. Also, it is readily apparent from the evidence that neither Mrs. Lowe nor her husband had any financial resources of their own, even to make the $3,800 initial down payment to Buckner Enterprises.

In many respects, this case is reminiscent of the Casanova Guns case. *Casanova Guns, Inc. v. Connally,* 454 F.2d 1320 (7th Cir., 1972). Like Virlow, Casanova Guns, Inc. (Casanova Guns) was a spinoff of another company that was about to be indicted for possession of unregistered firearms, which would have made it ineligible for renewal of its federal license. Like Virlow, the president and sole shareholder of Casanova Guns was the child of the president of the company about to lose its license. Like Virlow intended to do, Casanova Guns purchased the entire inventory of firearms of the older company. In exchange for the inventory, Casanova Guns gave an unsecured promissory note for $424,000. Casanova Guns was run in the same building and used the same display area as the original company, which it leased through an informal arrangement from the original company. Other family members who had been involved in the original company continued to be involved with the new company. Finally, after Casanova Guns took over the first company's entire gun business, the original company continued in the general sporting goods business.

The finding by the ATF commissioner, which was "substantially similar" to that of the district court, stated in part:

> ". . .[I]nvestigation has established that the applicant's employer, Casanova Guns, is a corporate successor in interest directly related

13

> to a corporation, Casanova's, Inc., [the original company] which is a convicted felon. The business operations of Casanova Guns, Inc., are substantially the same as the operations of its related predecessor. Furthermore, the officers of Casanova Guns, Inc. were the persons responsible for the operation of Casanova's, Inc. Therefore, Casanova Guns, Inc., being a related successor to a convicted felon, is prohibited from receiving a federal firearms license."

*Id.* at 1322.

On appeal, Casanova Guns argued that it was not a convicted felon and should not be denied a license on the basis of the felon status of Casanova's, Inc. The 7th Circuit disagreed, pointing out:

> "That view ignores the express language of the licensing act. The statute explicitly prohibits the issuance of a license to a convicted felon or to a corporation, partnership or association over which a convicted felon exercises or could exercise control. Additionally, it is well settled that the fiction of a corporate entity must be disregarded whenever it has been adopted or used to circumvent the provisions of a statute (citations omitted)." *Id.* at 1322.

The appellate court noted that it was apparent from the record that a substantial purpose for the incorporation of Casanova Guns was the circumvention of the statute restricting issuance of firearms licenses to convicted felons. In reaching this decision, it noted that Casanova Guns was formed after the original company was under federal indictment, that the new president of Casanova Guns had admitted that the second corporation was formed to ensure continuation of the gun business, that there was a significant unity of interest between the persons running the two companies, that they operated from the same building, that the new company was dependent upon the old for utilities and support services, and that the total assets of Casanova Guns derived from the inventory purchased from the original company. All of these things parallel, to a remarkable degree, the relationship between Virlow and Buckner Enterprises.

14

Further, the court in *Casanova Guns* noted that the inventory of the new company was purchased with a $424,000 unsecured note payable on demand. With respect to the financial arrangement, it stated, "We believe a debt of this nature and magnitude warrants the inference that Casanova's [the original company] possessed a substantial degree of control over Casanova Guns." Again, there is a striking similarity to Buckner Enterprises' financial position vis-a-vis Virlow's.

The 7th Circuit did note that its finding was bolstered by the admission of the owner of the original company that he exercised some control over Casanova Guns in order to protect his investment. While there is no such explicit admission by Joan Santes in this case, her actions implicitly compel the same conclusion. Indeed, how could it be any other way if she is going to have any meaningful protection of her investment.

Although sympathetic to the hardship the denial worked upon the Casanova enterprises, the 7th Circuit nevertheless affirmed the denial of the license application. *Id.*

At the time of the hearing on the motion in this court, Buckner Enterprises was still operating the hardware. Virlow had never paid any earnest money to Buckner Enterprises nor closed on the transaction. Drawing a comparison to the decision in *Casanova Guns Inc. v. Connally, supra,* defendant here points out that due to the large amount of unsecured debt in this seller-financed transaction, and the seller's huge stake in the buyer's success and continued payments, the seller's influence over the buyer must be seen as continuing. As Virginia Lowe stated, this business was her "mom's retirement account" and Mom was "desperate to where she wants to retire and this is the only income that she will have, minimal from her own commission." Transcript of August 24, 2004 Hearing at 222.

**Conclusion**

The court finds no genuine issues of fact material to a resolution of this case. These facts provided ample authority for the denial of the Federal Firearms License to Virlow, LLC, on the basis that a substantial purpose for the formation of Virlow was to circumvent the statute restricting issuance of firearms licenses to convicted felons. Defendant's motion will be GRANTED and the complaint DISMISSED.


Dated:  March 28, 2008                               /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge